## Baskett's Assignee v. Rash.

(Decided June 16, 1915.)

### Appeal from Henderson Circuit Court.

1. Guaranty—Extent of Liability.—One who guarantees to the purchaser of lots, conveyed to the purchaser by the guarantor, that he shall receive in actual cash from the sale of said lots within two years from that date the sum of $6,600, is, where the purchaser elects to keep the lots and recover the difference in the value thereof and the amount of the guaranty, liable only for the difference between the amount of the guaranty and the highest market price of the lots at any time during the guaranteed period.

2. Guaranty—Evidence—Recovery.—Where the guaranty covered the two years from October, 1911, to October, 1913, and the evidence showed the value of the lots in October, 1911, in October, 1912, and in October, 1913, and at all times between February 1912 and October, 1913, to be less than the amount guaranteed, it will authorize a recovery on the guaranty.

3. Evidence—Burden of Proof.—Where in an action by an assignee for creditors it is alleged that the defendant has in his possession the proceeds of the sale of property belonging to the assigned estate, and the defendant in his answer admits he has such proceeds, and sets up a state of case which authorizes him to hold and apply same to a debt owing him by the assignor, the burden of proof is on the defendant.

VANCE & HEILBRONER for appellant.

DORSEY & DORSEY for appellee.

OPINION OF THE COURT BY JUDGE TURNER—Affirming.

Prior to the 16th of October, 1911, appellee was the owner of about 4,000 sheep in Deaf Smith County, Texas, and on that day he sold them to J. J. Baskett and John W. Finn for $18,000, two-thirds of which was to be paid by Baskett and one-third by Finn. Baskett's two-thirds of the consideration was to be paid in a conveyance by him to Rash of twenty-two lots near Birmingham, Ala., at the price of $6,600, and the execution of his two notes, payable in one and two years, for $2,700 each for the balance, Rash retaining a lien upon Baskett's two-thirds interest in the sheep to secure the payment of the notes.

Simultaneously with the execution of the deed to the twenty-two lots, in which the recited consideration was one dollar and other considerations, Baskett executed and delivered to Rash the following paper:

"Henderson, Ky., Oct. 19th, 1911.

"I, J. J. Baskett, of the city and county of Henderson and State of Kentucky, have by deed of even date herewith conveyed to O. W. Rash twenty-two (22) town lots located near Birmingham and in the State of Alabama, at a valuation of $300 for each lot, being a total of $6,600.00 for all said lots (the deed conveying said lots show a consideration of one dollar); now it is a part consideration that I guarantee to said Rash that the said Rash, or his heirs or assigns, shall receive in cash from the sale of said lots within two years from this date the sum of six thousand six hundred dollars, with 7% semi-annual interest on same, and all taxes, costs, commissions or other expenses that may be assessed against said lots. Now I, the said J. J. Baskett, do hereby promise and bind myself, my heirs and my estate to pay to said O. W. Rash, his heirs or assigns, two years after above date any part of the said $6,600.00 and interest and taxes and other expenses as above mentioned that has not been paid from the sale of any of said 22 lots, and for any of said lots conveyed a credit of $300.00 is to be placed on said liability and when said Baskett pays the money on above contract then all unsold lots to be conveyed to him."

Thereafter, in September or October, 1912, Rash bought back from Finn, in a trade made for Finn by Baskett, Finn's one-third interest in the sheep, whereupon Rash and Baskett became the owners of the sheep in the proportion indicated. At the time of this trade, it being recognized by both Baskett and Rash that the twenty-two lots conveyed were of less value than $300.00 each, it was agreed between Rash and Baskett that Rash should take charge of the sheep and sell the same, and after paying the expenses thereof should first apply the two-thirds of the proceeds thereof coming to Baskett to the payment of the two notes of $2,700 each, which were a lien upon Baskett's interest therein, and should thereafter apply any excess coming to Baskett therefrom to the payment of any deficit in the value of the twenty-two lots under the above guaranty of Baskett.

Under this agreement Rash took charge of the sheep, and prior to the 20th of December, 1912, sold some of them. On that date Baskett executed a general deed of assignment of his property to the Ohio Valley Bank and

Trust Company, of Henderson, for the benefit of his creditors.

Out of the proceeds of the sheep sold before the assignment the first $2,700 note was paid, and that is not involved in this controversy. After the deed of assignment there was collected by Rash two sums aggregating $6,475.74, which, after deducting expenses and Rash's one-third interest thereof, left coming to Baskett $4,034.33; the last note and accrued interest being deducted from that sum left $1,282.65, which was paid to the assignee in March, 1913. In July, 1913, he further collected $1,049.68, being a payment on a note. for $5,287.00 executed by the purchaser to Rash for the last of the sheep, two-thirds of which he paid to the assignee.

In November, 1913, Rash collected on this note $3,398.22, which left a balance due thereon of about $1,050.

Out of this last payment he declined to pay anything to the assignee, claiming the right to apply the same, under the terms of Baskett's guaranty to him and under their arrangement made prior to the assignment, to the deficit in the value of the twenty-two lots.

This is an action by Baskett's assignee seeking to recover a judgment against Rash for two-thirds of this last collection, and incidentally involving two-thirds of the unpaid portion of the $5,287 note.

The defendant answered, setting up Baskett's guaranty and the arrangement between them prior to the assignment, and alleged that the lots so conveyed to him by Baskett were at no time during the two-year period of the guaranty worth in excess of $175.00 each.

The jury found a verdict for the defendant and fixed the value of the lots at $175.00 each, and the court rendered a judgment on the verdict, in effect upholding the right of Rash to apply on his claim under the guaranty that portion of the last payment belonging to Baskett, and further adjudging that Rash was entitled, upon the collection of the balance unpaid on the last sheep note, amounting to about $1,050, to apply same on his claim under the said guaranty, and that even that would be insufficient to cover the deficit in the value of the lots.

The first ground urged for reversal is that the evidence did not authorize a recovery by the appellee on his guaranty; that inasmuch as he had elected to retain the lots and recover the difference between their real

value and the guaranty value, he was only entitled to recover the difference between the guaranty value and the highest market value during the guaranty period, and that the evidence that at certain times during the guaranty period the lots were worth less than the guaranteed amount will not sustain a verdict under such guaranty. In other words, that there must be evidence showing that at no time during the guaranty period were the lots of the value fixed in the guaranty.

The evidence as to the value of these lots consisted of the depositions of three real estate men of Birmingham, all taken upon interrogatories. To two of them there was propounded this question:

"Please state what, in your opinion, was the reasonable average market value of said lots in October, 1911, 1912, and 1913; what is their reasonable average market value at this time. When I say average I mean the average value of each lot, considering the twenty-two lots as one class. I mean about the average market value in money, and not in trade."

The answer of one of the real estate men to this interrogatory was that the average market value of the lots was in October, 1911, 1912, and 1913, and at the time of the giving of his deposition, about $75, or $100 per lot on a cash basis, but that they would bring more if sold on terms. The answer of the other was that the average cash market value of the lots was about $70 per lot, but that they would bring more if sold on easy terms.

There was propounded to the other real estate man the following interrogatory:

"State the reasonable market value of said lots. I mean what they would average per lot, and state what their average value has been for the past two years, as near as you can. I mean the reasonable market value of these lots per lot."

In response to which he answered: "I would say about $150 per lot, and upwards, and that they have been worth this for the past two years." This deposition was given on the 7th of February, 1914. It would seem from this evidence that the value of the lots was fixed by the first two witnesses in October, 1911, in October, 1912, and in October, 1913, and by the last witness from February, 1912, up to February, 1914. There is no intimation or suggestion in the record that there was any difference in the value of any of these lots between October,

1911, and February, 1912, and we think, under the evidence as a whole, the jury was authorized to find that at no time during the guaranteed period was the average value of the lots in excess of $175.00. The jury was explicitly told in the instructions of the court that they were only authorized to find for the defendant on the guaranty the difference between the guaranty price and the highest market value of said lots during the guaranty period, and actually fixed the value at a much higher figure than was authorized by the evidence because of an allegation in defendant's answer, by which he was bound, that they were worth an average of $175 each.

But appellant insists that the court erred to its prejudice in deciding that it did not have the burden of proof, and, therefore, entitled to the concluding argument before the jury.

The substance of the plaintiff's petition is that it, as assignee of Baskett, had the legal title to an undivided two-thirds interest in the large flock of sheep, and that Rash had sold the sheep and was withholding from appellant two-thirds of the proceeds thereof, for which it prayed judgment. The defendant answered denying that any such assets came to its hands as such assignee, and asserted the guaranty so made by Baskett, and the arrangement made between him and Baskett prior to the assignment as to the application of the proceeds of the sale of the sheep. He did not deny, but expressly admitted, that he had in his hands the proceeds of the sale of the sheep, but set up a state of case which authorized him to hold the same, and the affirmative part of his answer was denied by the reply.

Under this state of the pleadings if there had been no evidence introduced, certainly the plaintiff would have been entitled to a judgment, and this being true, the burden of proof was on the defendant.

We see no prejudicial error, and the judgment is affirmed.